[PUBLISHED]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 06-12461

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 15, 2007
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-00254 CV-HL-5

WILLIAM A. FICKLING, JR.,
NEVA L. FICKLING,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

————————

Appeal from the United States District Court
for the Middle District of Georgia

————————

**(November 15, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and GIBSON,[*] Circuit Judges.

PER CURIAM:

This case is a taxpayer refund suit originating from a settlement between the

_____

[*] Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

taxpayers and the Internal Revenue Service ("Service") over claimed capital losses from a sale of securities in 1990. The settlement permitted the taxpayers to recognize seventy percent of their claimed losses from the sale. Now taxpayers assert that the thirty percent of losses disallowed should be treated as if thirty percent of the sale were a disregarded transaction, and they have filed amended returns that deduct from more recent capital gains this thirty percent as "unused basis." The district court granted the Government summary judgment. We affirm.

I.

William A. Fickling, Jr., founder and chairman of Charter Medical Corporation ("Charter"), and his family had owned a sizable portion of Charter's common stock. In February 1990, following a management-led leveraged buy out of Charter, William Fickling and his wife, Neva Fickling (collectively, "Taxpayers"), converted a block of their shares of Charter into debentures with a claimed market value of $16,041,839.[1] By December 1990, the market for Charter debentures had soured, and company-issued debt was selling for pennies on the dollar.

On December 19, 1990, Taxpayers, along with their adult children ("Fickling Children"), sold some $22 million of face-value Charter debentures to

---

[1] Taxpayers also owned other interests in Charter which are not relevant to this appeal.

William H. Anderson II for approximately $170,000. Included in this sale was the $16,041,839 worth of debentures at issue in this appeal, for which Taxpayers received $129,790.93 from Anderson. Taxpayers claimed a capital loss of $15,912,048 in their 1990 federal income tax return.[2] Fifty-four days after the sale, on February 11, 1991, Anderson sold the same $22 million worth of debt back to the Fickling Children for $193,987.86.

Faced with continued financial difficulty, Charter underwent restructuring in 1992. As part of the process, it exchanged outstanding debentures for common shares of the new Charter, including the debentures owned by the Fickling Children after the purchase from Anderson. Over the next three years, the Fickling Children sold on the open market their new Charter shares and reported their respective capital gains.

In 1995, the Service initiated an audit of the Taxpayers' personal income tax returns for the years 1988 through 1992. After an investigation, the Revenue Agent for the audit proposed a series of adjustments to the Taxpayers' returns for 1988, 1990, 1991, and 1992. Among the proposed adjustments was the disallowance of $15,912,048 in losses that the Taxpayers claimed as a result of the

---

[2] This was computed as the rounded sale price ($129,791) minus the basis of the debentures ($16,041,839).

sale to Anderson.  The Revenue Agent's report of the Service's position offered

three grounds for the disallowance, namely that the transaction between

Taxpayers, Anderson, and the Fickling Children was either a wash sale, a

transaction that lacked economic substance, or a related party transaction.  The

Taxpayers appealed the determination and ultimately reached a formal settlement

with the Service's Georgia Appeals Division in September 1999.  The settlement

agreement provided that the Taxpayers would recognize as a loss seventy percent

of what they had initially claimed in the 1990 return, or $11,138,433.  To

memorialize the settlement, the parties executed an Offer to Waive Restrictions on

Assessment and Collection of Tax Deficiency and to Accept Over Assessment

(Form 870-AD).

During the pendency of the appeal, the Taxpayers amended their returns for

the years 1993, 1994, and 1995 – the same years in which the Fickling Children

sold their shares of the newly-reorganized Charter – and reduced the combined

reported capital gains for these years by a total of  $7,077,121.[3]  Based on these

amended capital gains, the Taxpayers claimed overpayments for the years 1993

---

[3] The Taxpayers' capital gains as originally reported for these years totaled $10,624,246.
The $7 million in amended deductions is approximately the sum of thirty percent of the original
$16 million basis in the 1990 debentures ($4.8 million) and two sources of funds that the Service
required the Taxpayers to report as cancellation of indebtedness and original issue discount
income ($2.2 million).

4

through 1995 totaling $1,709,809. In October 2002, the Service denied the deductions claimed in the amendment on the grounds that the 1990 settlement had already accounted for the entire basis of the debentures, and that the Taxpayers in effect had waived their claim for thirty percent of the loss that they are now seeking.

The Taxpayers initiated this refund suit in July 2003. The parties filed cross-motions for summary judgment in March 2005; the district court denied the Taxpayers' motion and granted the Government's motion in an order issued on March 13, 2006. The Taxpayers timely filed their notice of appeal.

## II.

We review the district court's grant of summary judgment de novo. Sierra Club v. Leavitt, 488 F.3d 904, 911 (11th Cir. 2007). Summary judgment is appropriate only when, after viewing the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party, the court nonetheless concludes that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Id. The moving party carries the initial burden of production, which can be met by showing that the nonmoving plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

5

of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once this burden is met, the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). At issue in this case is whether the Taxpayers presented sufficient evidence that they have a basis in the Charter shares on which they filed the amended returns for 1993 through 1995.

In granting the Government's motion for summary judgment, the district court held that the Taxpayers have produced no evidence that they were entitled to a refund based on the amendments. The evidence that the Taxpayers did present – calculations of the so-called "unused basis" constituting thirty percent of the basis in the Charter debentures that the Taxpayers sold to Anderson in 1990 – failed to show that these Taxpayers are entitled to the claimed overpayments in their amended returns. Indeed, it is difficult to tell what cognizable legal grounds The Taxpayers rely upon to claim a refund based on transactions between the Fickling Children and third parties involving stock not owned by the taxpayers. In their brief, the Taxpayers appear to offer two arguments in support of the contention that they are entitled to deduct from their capital gains the basis on Charter stock owned by their adult children. We consider each in turn.

6

First, the Taxpayers argue that because the 1990 sale of Charter debentures to Anderson and resale to the Fickling Children was a sham, they ought to be disregarded and the Taxpayers remained the owners of the stock until 1993 for federal income tax purposes. It is not entirely clear how Taxpayers arrived at this position. One theory that they seem to advance is that by challenging the original return and capital loss claim filed in 1990, the Service bound itself to treat the transaction with Anderson and the Fickling Children as a sham. This contention is off the mark because the terms of the settlement allowed the Taxpayers to deduct seventy percent of their claimed losses from the transaction, demonstrating that the transaction was not disregarded for tax purposes. Moreover, the settlement between the Taxpayers and the Service was noncommittal as between the Government's three legal challenges, thus belying the Taxpayers' argument that the Government took the position that the Anderson transaction was a sham. Given the exacting requirements that taxpayers generally must satisfy in order to establish estoppel against the Government, see, e.g., Bowling v. United States, 510 F.2d 112, 113 (5th Cir. 1975) (per curiam),[4] the Taxpayers have failed to show that the Anderson sale was disregarded.

---

[4] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit prior to October 1, 1981.

The Taxpayers also attempt to pierce the form of their own sale to Anderson and recast the entire deal as a sham transaction, even though they took the opposite position in their original 1990 tax return and accepted the seventy-percent deduction in the settlement. It is well established that "while a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice . . . and may not enjoy the benefit of some other route he might have chosen to follow but did not." Bradley v. United States, 730 F.2d 718, 720 (11th Cir. 1984) (quoting Comm'r v. Nat'l Alfalfa Dehydrating and Milling Corp., 417 U.S. 134, 147, 94 S. Ct. 2129, 2136, 40 L. Ed. 2d 717 (1974)) (internal quotation marks omitted). The only exception to this rule does not apply in this case because the Taxpayers produced no evidence showing that the Anderson transaction was unenforceable ab initio due to a contracting defect such as fraud, undue influence, or mistake. See Plante v. Comm'r, 168 F.3d 1279, 1280-81 (11th Cir. 1999) (per curiam); Specter v. Comm'r, 641 F.2d 376, 386 (5th Cir. April 3, 1981) .

Second, the Taxpayers argue that the settlement they reached with the Service over the Anderson sale did not "reduc[e] the Ficklings' basis; it only prevented them from recognizing the entire loss claimed in 1990." The proposition that a settlement in which the Service recognized seventy percent of

8

the claimed losses from the transaction leaves the taxpayers with a carryover of thirty percent of basis is nonsense; the conclusion that taxpayers should then be able to turn around and deduct this amount from future capital gains of third parties is nonsense upon stilts. When the Taxpayers sold their debentures to Anderson in 1990, their entire basis in the securities was used to calculate the claimed losses. Based on these losses, the Taxpayers and the Service reached an agreement that extinguished both sides' further claims. The Taxpayers now attempt an end run around the settlement by reclaiming thirty percent of the original basis in the debentures, but they of course relinquished any rights to such a claim when they sold the debentures to Anderson. They cannot now double-count that same thirty percent. Any other conclusion would eviscerate the original settlement with the Service.

III.

For the foregoing reasons, the judgment of the district court is

**AFFIRMED**.