[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 22, 2011
JOHN LEY
CLERK

No. 11-10799
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-03317-JOF

KAREN MADDOX-JONES,

Plaintiff - Appellant,

versus

BOARD OF REGENTS OF UNIVERSITY SYSTEM OF GEORGIA,
d.b.a. Clayton State University,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 22, 2011)

Before EDMONDSON, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Karen Maddox-Jones (Maddox-Jones) filed suit against Defendants Board

of Regents of the University System of Georgia d/b/a Clayton State University

(CSU) claiming employment discrimination under Title VII. Maddox-Jones appeals the district court's grant of summary judgment in favor of CSU. On appeal, Maddox-Jones argues that the district court erred when it found that she had not demonstrated a *prima facie* case of race discrimination. She also asserts that the district court erred in deciding that CSU's non-discriminatory reason for the adverse action against her was not pretextual.[1] After reviewing the parties' briefs and the record, we affirm the district court's decision to grant CSU's summary judgement.

I

Maddox-Jones, an African American female, worked at CSU as a continuing education instructor in computer related classes. Prior to Alexander Federov (Federov) becoming the coordinator for the continuing education classes, Maddox-Jones was assigned to teach classes each quarter, ranging from nine to twenty classes.. However, when Federov became coordinator in the Winter 2007 term, Maddox-Jones's assigned classes decreased to seven for that term and thereafter she was not assigned to teach any classes.

When Federov became coordinator, he began to re-work the continuing

---

[1] The district court also granted summary judgment to CSU on Maddox-Jones's retaliation claim, but Maddox-Jones did not appeal that decision.

education program. He hired nine new instructors (five of whom were African American) and revised the curriculum. He also began to more evenly distribute the classes to all of the continuing education instructors to ensure that it was easy to cover classes if an instructor was unable to teach. As Maddox-Jones said in her own deposition, Federov told her that she was teaching too many classes and it would be difficult to replace her if she was in a car accident and died.[2]

After receiving only seven classes to teach (four of which were cancelled), Maddox-Jones complained to Brenda Findley, CSU's Human Resources Director, and Dale Bower, the Director of the Continuing Education Department at CSU. She informed Findley and Bower that she received less classes than in previous semesters because she was being discriminated against on the basis of her race.

In Spring 2007, Federov did not assign Maddox-Jones to teach any classes. Maddox-Jones claims that she contacted Federov's office twice and left messages with the receptionist. Federov claims that he may have called Maddox-Jones back once, but never heard from her again. Either way, Federov says that he did not assign Maddox-Jones to any classes because she did not contact him about teaching for the Spring 2007 quarter. There is no evidence in the record that

---

[2] Maddox-Jones and Federov seemed to have a less than amicable relationship. Along with being rather blunt about her possibly dying in a car accident, Federov neglected to invite her to a meeting and allegedly did not return her phone calls.

Maddox-Jones ever requested to be assigned classes in the Summer or Fall 2007 quarters.

In August 2007, Janet Winkler signed the Personnel Action Form terminating the school's relationship with Maddox-Jones. While Winkler could not remember the exact reason she signed the form, she did testify that for administrative purposes, the Human Resources Department prefers to terminate the employment of instructors who are no longer teaching classes. Winkler also testified that the termination was not punitive and that if a person terminated in this way wanted to start teaching again, she could.

## II

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Therefore, we consider all facts in the light most favorable to Maddox-Jones.

The moving party, here CSU, bears the initial burden of showing the

absence of a dispute about a material fact. *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007). If the moving party meets its burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Id.* A disputed fact is material if the fact "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (internal quotation marks omitted). Likewise, a plaintiff cannot defeat summary judgment by relying upon conclusory assertions. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

## III

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color . . . ." 42 U.S.C. § 2000e-2(a)(1). The plaintiff bears the burden of proving that the employer discriminated against him unlawfully. *Hinson v. Clinch County, Ga. Bd. Of Educ.*, 231 F.3d 821, 827 (11th

Cir. 2000).

Where, as here, the plaintiff relies on circumstantial evidence of discrimination, the case is analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973). *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of presenting sufficient evidence of her *prima facie* case. 411 U.S. at 802, 93 S. Ct. at 1824. Once the plaintiff shows sufficient evidence of a *prima facie* case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id*. Then the burden shifts to the plaintiff to show that the reason is pretextual. *Id*. at 804.

IV

We apply different formulations of the elements of a *prima facie* case, depending on the facts of the individual case. The *prima facie* case for disparate treatment is our basic standard. This requires the plaintiff to show that: (1) she is a member of a protected class, (2) she is quailed for the job, (3) she suffered an adverse employment action, (4) and her employer treated similarly situated employees outside the protected class more favorably. *Burke-Fowler*, 447 F.3d at 1323. Alternatively, a case involving a demotion requires a showing of the first

6

three factors above, and the plaintiff must show that she was replaced by a person outside her protected class rather than that an employee outside her class was treated more favorably. *Rioux v. City of Atlanta*, 520 F.3d 1269, 1275-76 (11th Cir. 2008); *Hinson*, 231 F.3d at 828.[3]

Maddox-Jones's case does not neatly fit into any of above standards, but she argues that the demotion standard best fits her case. The Magistrate Judge agreed because by teaching fewer classes, Maddox-Jones earned less money; therefore demoted. The District Court did not agree with this analysis; nonetheless, the District Court analyzed the case under the demotion standard. Usually our cases that involve demotions involve more than simply a decrease in pay. *See generally Hinson*, 231 F.3d at 828-29 (involving a plaintiff demoted from the position of principal to a teacher position which had less responsibility and prestige but the same amount of pay); *Rioux*, 520 F.3d at 1273 (involving a plaintiff demoted from Deputy Fire Chief to Battalion Chief, requiring less responsibility and prestige). Here, while Maddox-Jones did suffer a decrease in pay due to the decrease in the number of classes taught, she retained the same title, prestige, and responsibility.

---

[3] Maddox-Jones also argues for the first time on appeal that the *prima facie* case for failure to hire is the appropriate standard to evaluate her claims. Even if this was not the first time she raised this issue, the failure to hire standard would still be inappropriate because Maddox-Jones was hired to teach at CSU in 2005, and the issues in this case arose during the course of her employment in 2007.

In addition, the record does not show that an instructor was guaranteed to be assigned to the same class each semester. Rather, the subject matter of classes and the times the classes are offered changed every semester. Thus, being assigned to teach different classes is not a demotion, but being assigned fewer classes is an adverse employment action. Therefore, we analyze Maddox-Jones's *prima facie* case under the disparate treatment formulation.

It is undisputed that Maddox-Jones is a member of a protected class (African American), that she is qualified to teach the majority of the continuing education classes at CSU, and that she did suffer an adverse employment action. Thus, the only issue is whether or not persons outside her protected class were treated more favorably by Federov when he began assigning classes in the 2007 Winter term.

The Magistrate Judge found, under the demotion standard, that Maddox-Jones was replaced by someone outside her protected class because three white instructors taught her classes. The District Court, in a more thorough review of the record, found that Maddox-Jones did not show that she was replaced by someone outside of her protected class. First, to prove this prong of the *prima facie* case, Maddox-Jones must identify comparators outside of her protected class. Initially Maddox-Jones in her EEOC complaint, named several African Americans

8

as comparators. However, in her affidavit filed with her motion for partial summery judgment, she asserted three Caucasians comparators: Federov, Luca Yearsovich, and Cassandra Brackin.[4] Since these individuals are all instructors in CSU's continuing education program and taught some of the same classes as Maddox-Jones, they are similarly situated to her. Furthermore, one could come to the conclusion that Brackin was less qualified than Maddox-Jones because Brackin had no prior experience as a software application instructor.

Next, Maddox-Jones must show that these instructors were given favorable treatment. Maddox-Jones first argues that Federov gave the three comparators a disproportionate number of classes. In Winter 2007, Federov was assigned eight classes, Yearsovich was assigned four classes and Brackin was assigned five classes. Maddox-Jones was assigned seven classes, and two other African Americans were assigned six and five classes, respectively. At first glance this seems like Maddox-Jones was shown favorable treatment over the other instructors because only one instructor had more classes assigned to him — Federov.

Maddox-Jones counters this by arguing that although she was given more

_____

[4]Maddox-Jones named one other Caucasian that replaced her, but he taught at a different campus and Federov did not assign him his classes.

classes, the classes were ones that were not popular among students, guaranteeing that the classes would be cancelled.[5] CSU counters that it is unpredictable which classes will be cancelled. This unpredictability is proven through the number of classes cancelled for each instructor. In Winter 2007, Maddox-Jones had four of her seven classes cancelled (57%). Yearsovich had three of his four classes cancelled (75%), and Brackin had two of her five classes cancelled (40%). Maddox-Jones had less cancellations than one of her comparators; therefore, Yearsovich was not treated more favorably. Also, looking at the instructor pool as a whole: three instructors had 100% cancellation rates (a Hispanic, an African American, and a Caucasian), and only one instructor had zero cancellations in Winter 2007 — an African American instructor.

The Defendant also argues that by limiting the comparators to only three instructors, Maddox-Jones is "cherry-picking" her comparators. Maddox-Jones does offer evidence that under Federdov's administration of the program, the number of classes assigned to African Americans decreased by about 33%. However, Maddox-Jones failed to also acknowledge that despite this 33% drop,

---

[5] One of these classes was "Brochures and Flyers," a class that Maddox-Jones argues was wholly composed of a chapter of the "Word Class." Thus, the class would be of no value to either students who had never taken the "Word Class" or to students that had taken the "Word Class."

Federov still assigned a majority of the classes to African Americans (58%) .

Admittedly, it is strange that Maddox-Jones went from teaching several classes for seven quarters to being assigned no classes in the Spring 2007 quarter. However, during the Spring 2007 quarter, Federov still assigned 58% of the classes to African Americans. Also, in the Spring 2007 quarter, the two instructors with the highest number of classes were Yearsovich and an African American instructor. Thus, it seems that there was genuine miscommunication between Federov and Maddox-Jones regarding whether she wanted to teach during the Spring 2007 quarter. Lastly, it is clear that Maddox-Jones was terminated only for administrative reasons and that Federov did not participate in her termination.

Since Maddox-Jones has failed to show that persons outside her protected class were shown favorable treatment, Maddox-Jones has not proved her *prima facie* case. Therefore, the analysis under the *McDonnell Douglas* burden shifting framework ends, and the court does not need to evaluate Defendant's alleged reasons or Maddox-Jones's claims of pretext.

**AFFIRMED.**

11