[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10184
Non-Argument Calendar
_____

D.C. Docket No. 4:10-cv-00169-HLM

DERICK MULKEY,

Plaintiff-Appellant,

versus

BOARD OF COMMISSIONERS OF
GORDON COUNTY, GEORGIA,
GORDON COUNTY PARKS AND
RECREATION DEPARTMENT,
DERRICK MCDANIEL,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(August 27, 2012)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Derick Mulkey appeals from the district court's grant of summary judgment in favor of the Board of Commissioners of Gordon County, Georgia (the Board), the Gordon County Parks and Recreation Department (GCPRD), and GCPRD Director Derrick McDaniel (collectively the defendants) in Mulkey's employment discrimination lawsuit filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  After a thorough review, we vacate and remand for further proceedings.

I.

In 2007, Mulkey was employed as an assistant athletics coordinator with GCPRD, where he was friendly with co-worker Danette Ward.  McDaniel, as the director of GCPRD, supervised both Mulkey and Ward.

On August 22, 2007, Ward and Mulkey met with Human Resources Director Garah Childers to file a sexual harassment complaint against McDaniel.  Ward reported that McDaniel twice asked her whether she was wearing panties and told her he had fantasized about her after a staff meeting in July.  Ward did not report any other instances of harassment.  She explained that she had not come forward earlier because she feared McDaniel would punish her.  Ward also complained that McDaniel showed favoritism to GCPRD employee Cindy Wilson

2

because the two were having an affair.  Ward explained that she had seen Wilson and McDaniel kissing when Ward, Mulkey, Wilson, and McDaniel attended a conference in Savannah.  Mulkey confirmed that Wilson received preferential treatment and stated that he had seen McDaniel and Wilson having sex in the hotel room Mulkey shared with McDaniel at the Savannah conference.

Childers investigated Ward's allegations of harassment, interviewing several employees and McDaniel himself.  McDaniel admitted making the alleged harassing statement to Ward, but explained that Ward had not been upset and had joked about it after leaving his office.  He denied that he had anything but a professional relationship with Wilson.  None of the other employees heard any inappropriate comments from McDaniel.

During a second interview with Ward, Childers asked whether McDaniel had made any other comments to her, and Ward responded that he had not.  Ward admitted that she had made recordings of conversations and meetings using a county-owned digital recorder she borrowed from a friend who worked for the police department.  She informed the investigators that she had McDaniel's July comment on a recording.

At that point, Childers interviewed Mulkey again.  Mulkey admitted that he had not personally heard McDaniel make any sexual comments to Ward, but he

3

stated that he had a recording of one conversation in which McDaniel made an inappropriate comment. He thought there were about five or six recordings in all. Mulkey did not inform Childers of the other comments Ward told him McDaniel had made because Childers did not ask and he assumed Ward would have told Childers about these other incidents. Childers interviewed Ward for a third time, asking if there was anything else Ward needed to report. Ward responded that there was nothing else. Ward and Mulkey turned over about twenty hours of tape that they had recorded. On one tape, McDaniel asked Ward about her panties.

At the conclusion of the investigation, Childers determined that although McDaniel had made inappropriate comments to Ward on one occasion, it did not rise to the level of sexual harassment. Childers and Gordon County Administrator Randall Dowling met with McDaniel and issued McDaniel a written reprimand. Dowling also expressed concern over McDaniel's loss of control in GCPRD and instructed McDaniel to put an end to the trouble.

The day after the investigation concluded and McDaniel was reprimanded, McDaniel terminated Mulkey and Ward. McDaniel advised Mulkey that he was being terminated for (1) insubordination, (2) giving a false statement during the investigation, (3) borrowing county property for personal use, and (4) conduct unbecoming a county employee.

Mulkey appealed his termination, first to Dowling and then to the Board. Both upheld his discharge. Mulkey then filed a complaint with the EEOC, which determined that there was probable cause to believe the termination was retaliatory given the temporal proximity between McDaniel's reprimand and Mulkey's termination and the fact that Mulkey was not otherwise disciplined before his termination. Mulkey then filed the instant complaint in federal court alleging that McDaniel retaliated against him based on his participation in Ward's allegations of sexual harassment.[1]

The defendants moved for summary judgment, arguing that Mulkey could not establish a prima facie case of retaliation because Mulkey did not engage in any protected activity and there was no causal connection between Mulkey's involvement in the investigation and his termination. They asserted that Mulkey did not have an objectively reasonable good faith belief that McDaniel's conduct was illegal. Alternatively, the defendants argued that, even if Mulkey satisfied the prima facie case, McDaniel had legitimate, non-discriminatory reasons for terminating Mulkey, and Mulkey could not show the reasons were retaliatory.

---

[1] In his complaint, Mulkey named as defendants GCPRD, McDaniel, and the Board. The district court concluded that McDaniel and GCPRD were not the proper defendants in a Title VII action and dismissed the claims against them. Mulkey does not appeal that decision. Thus, he has abandoned it. *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998).

Mulkey responded to the summary judgment motion, asserting that his conduct was protected as "opposition" and that he had a good faith belief that McDaniel's behavior was sexual harassment. In support, Mulkey submitted his own affidavit, dated August 2011, in which he stated:

> In November 2006, my supervisor, Derrick McDaniel and two other co-workers Cindy Wilson and Danette Ward, and I attended a work related conference in Savannah, Georgia. At that conference I roomed with McDaniel. On two occasions during the conference I observed McDaniel and Cindy Wilson engaged in intimate conduct. I first observed them kissing on a bench on River Street. Then I accidentally walked in on them in my hotel room while they were engaged in sex.
>
> I was told by Ms. Ward that McDaniel had previously made overtures for sex to her. She told me that he had on one occasion offered to purchase a TV for her if she would give him a "blow job." On another occasion he had offered her time off if she would let him rub against her backside. She told me that there were multiple occasions when he had made inappropriate sexual remarks to her when she was in his office by herself with him. She said she had ignored his overtures . . . .
>
> After the conference in Savannah, the work environment at the office began to change. Specifically, Derrick McDaniel began showing favoritism to Cindy Wilson, while at the same time he was becoming increasingly hostile toward Danette Ward.
>
> In late July, 2007, Ms. Ward taped a conversation with McDaniel wherein he twice asked her whether she was wearing any panties or not. He alluded to fantasizing about her. Because she feared retaliation, Ms. Ward did not want to immediately report the matter to Human Resources. The situation in the office continued to grow more hostile toward both of us so, on Wednesday, August 22, 2007, I went with Ms. Ward to the office of Garah Childers, the Human Resources Director. In that meeting, Ms. Ward told Ms. Childers that McDaniel had been sexually harassing her and she

6

specifically referred to the comment about her panties as an example. We also expressed our belief that McDaniel was treating Cindy Wilson better than Ward based on her having a relationship with him . . . .

I believed in good faith that I was supporting Ms. Ward and opposing what I perceived to be illegal discrimination by McDaniel . . . .

Mulkey also submitted a copy of the EEO investigation and a transcript of the Board's review of his termination. Neither Mulkey nor the defendants conducted any discovery.

A magistrate judge recommended granting the defendants' summary judgment motion, finding that Mulkey failed to establish a prima facie case of retaliation because he could not show that he had an objectively reasonable good faith belief that McDaniel engaged in sexual harassment. The magistrate judge noted that there was only one inappropriate remark, which was not sufficiently severe or pervasive to enable Mulkey to believe harassment occurred. Additionally, the magistrate judge found that Mulkey's allegations that Wilson received favorable treatment based on her romantic relationship with McDaniel was insufficient to establish harassment or Mulkey's good faith belief that harassment occurred. The magistrate judge further concluded that Mulkey's statement in his affidavit that there were other incidents was insufficient because

7

Mulkey drafted the affidavit four years after the events, he did not report the other incidents during the investigation, he made only conclusory allegations, and it was unclear when the incidents occurred and when Ward told Mulkey about them.

Mulkey objected to the recommendations and submitted a supplemental affidavit to clarify the time line of events. The district court adopted the recommendation to grant summary judgment, finding that Mulkey's affidavit did not show that Mulkey had an objectively reasonable good faith belief that sexual harassment had occurred. The district court agreed with the magistrate judge that the affidavit made only conclusory and undated allegations. The court also declined to consider the supplemental affidavit. This is Mulkey's appeal.

## II.

We review a district court's grant of summary judgment *de novo*, viewing all evidence and drawing all reasonable inferences in favor of the non-moving party. *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011). Summary judgment is appropriate when the record presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* We review the district court's treatment of the magistrate judge's report and recommendation for abuse of discretion. *Williams v. McNeill*, 557 F.3d 1287, 1290 (11th Cir. 2009). Similarly, we review a district court's decision not to consider arguments

8

that were not raised before a magistrate judge for abuse of discretion. *Id.* at 1290-92.

For purposes of summary judgment, the moving party bears the initial burden of showing the absence of a dispute about a material fact. *Finking v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007). If the moving party meets its burden of production, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Id.* A disputed fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation marks omitted). Likewise, a plaintiff cannot defeat summary judgment by relying upon conclusory assertions. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

### III.

Title VII makes it unlawful for an employer to retaliate against an employee because he has (1) "opposed any employment practice made an unlawful employment practice by [Title VII]" (the opposition clause); or (2) because he has

9

"made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under [Title VII]" (the participation clause).[2]  42 U.S.C. § 2000e-3(a); *see also EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).

A retaliation claim based on circumstantial evidence is analyzed under the *McDonnell Douglas*[3] format.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162-63 (11th Cir. 1993).  To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the materially adverse action.  *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010), *cert. denied*, 132 S.Ct. 1795 (2012).  Here, the parties do not dispute that Mulkey suffered an adverse action in his termination.

To show that he engaged in statutorily protected conduct, Mulkey does not have to prove that McDaniel sexually harassed Ward.  *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989).  Rather,

---

[2]  The participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge with the EEOC." *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000).  But taking part in an employer's internal investigation is not protected activity under the participation clause.  Thus, we evaluate Mulkey's claims under the opposition clause.  *See id.*  Moreover, Mulkey does not challenge the district court's determination that his claim was brought under the opposition clause rather than the participation clause.  Thus, Mulkey has abandoned any appeal of that issue.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

10

Mulkey must show that he reasonably held a good faith belief that the discrimination existed.  *Id.*  To demonstrate that he held a reasonable, good faith belief that discrimination occurred, Mulkey must show both that (1) he subjectively believed in good faith that McDaniel's behavior was discriminatory, and that (2) his belief was objectively reasonable in light of the facts and record presented.  *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008).  "The objective reasonableness of an employee's belief that [his] employer has engaged in an unlawful employment practice must be measured against existing substantive law."  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).  There is no dispute that Mulkey subjectively believed that McDaniel's behavior towards Ward was unlawfully discriminatory.  Thus, at issue on appeal is whether the district court properly concluded that Mulkey's belief was not objectively reasonable.  *See Butler*, 536 F.3d at 1213.

To establish a hostile-environment sexual-harassment claim under Title VII, an employee must show, among other things, that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (*en banc*).

The district court cited only one incident as support for Mulkey's belief that

11

McDaniel was engaged in unlawful conduct.  In his affidavit, however, Mulkey stated that Ward had told him that McDaniel had previously made sexual overtures to her, including one time when McDaniel had offered to purchase a TV for Ward if Ward gave McDaniel a "blow job," and another occasion when McDaniel had offered Ward time off if Ward would let McDaniel rub against her backside. Mulkey also stated that Ward had told him that McDaniel had made inappropriate sexual remarks to her on multiple occasions when she was alone with McDaniel in his office.  Although Mulkey did not state when these alleged incidents took place or when, specifically, Ward had told Mulkey about the incidents, Mulkey did state that his belief that he was in good faith supporting Ward and opposing what he perceived to be McDaniel's unlawful actions was because of those incidents, among others.

Viewing the evidence in the light most favorable to Mulkey, and drawing all inferences in Mulkey's favor, we conclude that there is a genuine issue of material fact regarding whether Mulkey's belief was objectively reasonable.  Mulkey's affidavit is neither conclusory nor speculative.  And, although the court correctly noted that the time line of the allegations was less than clear, when the entire affidavit is read in context, it is clear that Mulkey knew of these other alleged incidents when he accompanied Ward to human resources to make her complaint.

12

Although the single July incident would not be sufficiently severe or pervasive to render Mulkey's belief objectively reasonable, Mulkey's affidavit cites several other incidents.  The fact that neither Mulkey nor Ward mentioned these other incidents during the Board's investigation, although curious, goes to the weight of the evidence and is not a proper consideration in determining whether Mulkey set forth a prima facie case at the summary judgment stage. Mulkey's affidavit need not establish that harassment actually occurred, but it was sufficient, for purposes of rebutting summary judgment, to establish that he believed it was happening.

Accordingly, we conclude that the district court erred when it found that Mulkey failed to establish a prima facie case of retaliation, and thus summary judgment in favor of GCPRD on this ground was improper.[4]  Because neither the magistrate judge nor the district court considered whether GCPRD had legitimate,

---

[4] The district court did not abuse its discretion by refusing to consider Mulkey's supplemental affidavit and supporting materials because the magistrate judge had not considered that evidence in his report and recommendation.  *See Williams*, 557 F.3d at 1290.  Furthermore, the district court did not err by refusing to consider the EEOC's reasonable-cause determination.  *See Barfield v. Orange Cnty.*, 911 F.2d 644, 649-51 (11th Cir. 1990).  Although EEOC determinations may be "highly probative," in determining whether to admit an EEOC determination, the district court may consider:  (1) whether the report contains legal conclusions in addition to its factual content; (2) whether the report raises questions of trustworthiness under Federal Rule of Evidence 803(8)(C); and (3) whether it presents problems cognizable under Rule 403.  *Id.* at 650.  Because the district court here determined that the EEOC's determination was conclusory, the court was not required to defer to the EEOC's evaluation of the claim.  *See Barfield*, 911 F2d at 649-51.

13

non-discriminatory reasons for terminating Mulkey, we decline to do so in the first instance.  We therefore vacate and remand for further proceedings.

**VACATED AND REMANDED.**