[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10145
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-02503-TCB

JOHNNY GILES, JR.,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,
BELLSOUTH CORPORATION,
AT&T INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(October 3, 2013)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Johnny Giles, an African-American male over the age of 40, appeals the district court's grant of summary judgment in favor of defendants BellSouth Telecommunications, Inc., BellSouth Corporation, and AT&T, Inc., on his *pro se* complaint alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1). Mr. Giles argues that summary judgment was improper because sufficient evidence showed that BellSouth discriminated on the basis of his age, race, and sex by (1) denying him a promotion to the position of services technician, (2) subjecting him to a hostile work environment, (3) imposing intolerable working conditions that led to his constructive discharge, and (4) violating the Georgia Racketeer Influenced and Corrupt Organizations Act by defrauding customers and engaging in racial discrimination. Upon review of the record and the parties' briefs, we affirm the district court's grant of summary judgment.

## I.

Mr. Giles began working for BellSouth in 1971. He held various positions until he retired as a testing technician in 2001. Mr. Giles soon regretted his decision. He eventually reapplied to BellSouth, and was hired as a sales associate.

As a sales associate, Mr. Giles was responsible for recommending and selling a variety of telecommunications products and services over the phone. He

2

quickly became disenchanted with his position. Managers would announce over speakers which employees had, and which had not, made sufficient sales for the day. They would also counsel employees on their performance in areas of the office where other employees could listen to the conversations. Mr. Giles found this environment stressful, and testified that his job was only made worse by the repeated counseling by his managers due to Mr. Giles frequently being late to work. Unhappy with his position as a sales associate, Mr. Giles diligently applied to other positions using BellSouth's formal bidding process, but failed to apply to any services technician positions from November to December of 2008.

After being disciplined numerous times for his poor performance and chronic tardiness, Mr. Giles voluntarily resigned on December 18, 2008. In his resignation meeting with BellSouth he was repeatedly asked whether he was sure he wanted to resign, but Mr. Giles testified he was "fed up" and had "made up [his] mind." Upon execution of the resignation paperwork, BellSouth agreed to, among other things, provide Mr. Giles 79 weeks termination pay and to keep him on the payroll until he exhausted his vacation time.

On April 9, 2009, Mr. Giles filed an intake form and verified charge of discrimination with the Equal Employment Opportunity Commission. The charge of discrimination alleged only that BellSouth's failure to promote Mr. Giles to

services technician from "November 2008 up to December 31, 2008" and his "discharge" violated Title VII and the ADEA.

## II.

We review a district court's grant of summary judgment *de novo*. *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1161-62 (11th Cir. 2006) (citation omitted). We consider all evidence and reasonable factual inferences in the light most favorable to the non-moving party. *Rojas v. Fla. Dep't of Bus. & Prof'l Regulations Pari-Mutual*, 285 F.3d 1339, 1341-42 (11th Cir. 2002) (citation and quotation marks omitted). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact and that the moving party is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See also Wilson v. B/E/ Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (citations omitted). The moving party bears the burden of production. *Fickling v. United States*, 507 F.3d 1302, 1304 (11th Cir. 2007) (citation omitted). If the moving party meets this burden, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Id*. "For factual issues to be considered genuine, they must have a real basis in the record," *Mize v. Jefferson City Bd. Of Educ.,* 93 F.3d 739, 742 (11th Cir. 1996) (citations omitted), and mere conclusions and unsupported factual allegations are legally insufficient to

defeat a summary judgment motion. *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir.1989).

## III.

Upon review, we conclude that the district court properly granted summary judgment on Mr. Giles' claims. In doing so, though the court correctly rejected the majority of Mr. Giles' claims on the merits, it erred by addressing his hostile workplace claim because it was not administratively exhausted with the EEOC.[1]

## A.

Under both Tile VII and the ADEA, as a condition precedent to filing a law suit an individual must exhaust his administrative remedies by filing a charge of unlawful discrimination with the EEOC. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (citing 42 U.S.C. § 2000e-5(b)) [Title VII]; *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) (citing 29 U.S.C. § 626(d)(2)) [ADEA]. The filing of a charge of discrimination marks the beginning of a regulatory scheme involving "'an integrated, multi-step enforcement procedure' that enables the EEOC to detect and remedy various discriminatory

---

[1] We reject as meritless Mr. Giles' argument on appeal that the district court erred by dismissing AT&T Inc. and BellSouth Corporation as parties. These corporations presented a declaration from payroll analyst Devin Meier, who explained there was no record of Mr. Giles ever working for either company. And although Mr. Giles testified that over his career he worked for "every company that is out there that was under the AT&T umbrella," he admitted that between 2005 and 2009 he only worked as a sales associate for BellSouth Telecommunications. Review of the evidence shows there is no doubt the district court properly dismissed AT&T Inc. and BellSouth Corporation.

5

employment practices." *Bost*, 372 F.3d at 1238-1239 (quoting *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62 (1984)). In order to ensure that individuals do not circumvent this regulatory process and that "the settlement of grievances be first attempted through the office of the EEOC," *Wu v. Thomas,* 863 F.2d 1543, 1548 (11th Cir. 1989) (citation omitted), a plaintiff's federal complaint is "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citation omitted).

Prior to reaching the merits of Mr. Giles' claims of discrimination, we must first determine whether the district court properly addressed only those claims that Mr. Giles exhausted through his verified charge of discrimination. We have said that judicial claims are exhausted if they are "like or related to, or grew out of" allegations in an EEOC charge, and that a plaintiff may assert claims that merely "'amplify, clarify, or more clearly focus'" allegations raised before the EEOC. *Gregory v. Ga. Dept. of Human Res.*, 355 F.3d 1277, 1279-1280 (11th Cir. 2004). Although we are "extremely reluctant to allow procedural technicalities to bar claims" and "the scope of an EEOC complaint should not be strictly interpreted," *Id*. at 1280, a plaintiff is nevertheless barred from raising new acts of discrimination in his complaint. *Wu*, 863 F.2d at 1547 (citation omitted).

Here, the district court correctly held Mr. Giles exhausted his failure to promote and constructive discharge claims, but erred by addressing his hostile workplace claim on the merits. Mr. Giles' charge speaks for itself:

> Beginning on or about November 2008 up to December 31, 2008 I have been denied a promotion to Service Technician. I complained formally to Human Resources on December 10, 2008 that I felt that I was being denied a promotion based on my race and age. No investigation was performed. On February 23, 2009 I was discharged.
>
> No reason was given for denial of my promotion. The reason given for my termination was that: "I had a poor attendance record and that I did not meet sales goals."
>
> I believe I have been discriminated against based on my race (African-American) and in retaliation for opposing unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and because of my age (56) in violation of the Age Discrimination in Employment act of 1967, as amended.

Mr. Giles' allegations pertain only to his failure to promote and constructive discharge claims. Because his hostile workplace claim is a "new act of discrimination" not exhausted in his administrative charge, Mr. Giles was barred from raising the claim in his complaint. *Wu*, 863 F.2d at 1547 (citation omitted). The district court should therefore have only addressed Mr. Giles' failure to promote, constructive discharge, and RICO claims, which we examine in turn below.

7

**B.**

We conclude that the district court properly dismissed the failure to promote, constructive discharge, and Georgia RICO claims on the merits. Those claims are squarely foreclosed by circuit precedent because (1) Mr. Giles never applied for the promotion he contends he should have received, (2) his alleged workplace conditions are insufficient to prove he was compelled to resign, and (3) his Georgia RICO claim is not cognizable under the express terms of the statute.

**1.**

Under both Title VII and the ADEA, a plaintiff may show a company's failure to promote was discriminatory through either direct or circumstantial evidence. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (examining allegations of discrimination in ADEA context); *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000) (examining allegations of discrimination in Title VII context). "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citation omitted). *See also Wilson*, 376 F.3d at 1086 (noting that "'only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of' some impermissible factor constitute direct evidence of discrimination."). Circumstantial evidence, on the

8

other hand, may be proven under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Kragor*, 702 F.3d at 1308 (applying *McDonnell Douglas* framework to ADEA claim); *Joe's Stone Crab, Inc.*, 220 F.3d at 1286 (applying *McDonnell Douglas* framework to Title VII claim). A plaintiff proves a prima facie case of discrimination under this framework by showing that: (1) he belongs to a protected class, (2) he both applied and was qualified for a promotion, (3) he was rejected despite his qualifications, and (4) other equally or less-qualified employees outside his class were promoted. *Brown v. Ala. Dept. of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010) (citation omitted). If, however, "an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminatory failure to promote." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004) (citations omitted). *See also Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003) (reaching the same conclusion in a reduction-in-force context).

Mr. Giles' failure to promote claim could not survive summary judgment. Mr. Giles offered no direct evidence of discrimination, and was unable to prove his claim by pointing to circumstantial evidence. In light of the allegations exhausted in his charge of discrimination filed with the EEOC, Mr. Giles is limited to arguing that his rights were violated for failing to receive a promotion to services

9

technician from "November 2008 up to December 31, 2008." Confined to these factual bounds, his claim fails.[2] The undisputed facts below state that "[a]lthough Giles bid on a number of Services Technician titles from January 2008 forward, he did not have a bid on file for any of the Services Technician vacancies which were filled between November 2008 and April of 2009." Mr. Giles' failure to submit an application for a services technician position through his employer's formal system of posting vacancies dooms his claims. Generally, a plaintiff cannot claim an employer discriminatorily failed to give a promotion when the employee never applied for the position.[3]

---

[2] Although Mr. Giles filed an unverified EEOC intake form that provided more detailed and temporally broader allegations of discrimination than the verified EEOC charge of discrimination, the district court ruled that the intake form could not serve as a basis for exhaustion. Mr. Giles does not challenge the district court's exhaustion analysis on appeal. Even if he had, we would reach the same conclusion as the district court. At least under the circumstances of this case, allowing Mr. Giles' unverified EEOC intake form to exhaust allegations of discrimination would defeat the aim of an administrative scheme designed, in part, to swiftly settle claims of discrimination through non-legal means. *See Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 395-407 (2008) (examining whether EEOC intake form should serve as a charge of discrimination for ADEA claim); *Pijnenburg v. West Ga. Health Sys., Inc.*, 255 F.3d 1304, 1305-1307 (11th Cir. 2001) (examining whether EEOC intake form should serve as a charge of discrimination for Title VII claim).

[3] We note that a plaintiff alleging discrimination need not show he applied for a job or promotion if doing so would have been futile, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 367 (1977), and that this principle applies to cases where the employer has a "consistently enforced discriminatory policy" that will deter applicants who are aware of the policy from applying because they know they face "certain rejection." *Id.* at 365. We need not consider this point because Mr. Giles did not raise this argument before us or the district court.

10

## 2.

Turning our attention next to Mr. Giles' constructive discharge claim, we conclude that it too lacks merit. The burden of proving a claim of constructive discharge under both Title VII and the ADEA is high, requiring the plaintiff to show that an employer, on account of the plaintiff's statutorily protected status, imposed working conditions "so intolerable" that a reasonable person in such a position "would have been compelled to resign." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1230-1231 (11th Cir. 2001) (discussing constructive discharge in ADEA context) (citation omitted); *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (discussing constructive discharge in Title VII context) (citation omitted). We evaluate the nature of these conditions under an objective standard, and do not take the "subjective feelings" of the plaintiff into account. *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998).

Applying this standard, we conclude that Mr. Giles failed to prove his constructive discharge claim. Viewing Mr. Giles' described workplace conditions from an objective standpoint, they were not so intolerable that a reasonable person in his position would have been compelled to resign. *Hipp*, 252 F.3d at 1233 (noting employees are not guaranteed "a stress-free working environment."). The district court therefore properly granted summary judgment on this claim.

11

**3.**

We address finally the claim that BellSouth violated Georgia's RICO statute. Mr. Giles argues on appeal that BellSouth violated the statute by adding duplicate charges and features to customers' bills and by discriminating against African-Americans. Under the statute, it is unlawful to engage in a "pattern of racketeering activity." Ga. Code Ann. § 16-14-4. A pattern of racketeering activity is defined as engaging "in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions," *Id.* at § 16-14-3(8)(A), and racketeering activity, in turn, is defined as committing, or attempting to commit, certain predicate acts consisting of violent crimes, drug crimes, and fraud. *Id.* at § 16-14-3(9). The statute also provides a cause of action for any person injured by a violation of the statute, which requires proving two or more predicate acts were committed and that the plaintiff's injury was the proximate cause of those acts. *Id.* at § 16-14-6(c); *see also O'Neal v. Garrison*, 263 F.3d 1317, 1323 (11th Cir. 2001).

The district court did not err in granting summary judgment on this claim. The record contains no evidence that Mr. Giles was injured by BellSouth's commission of any predicate acts. Despite Mr. Giles' apparent argument to the contrary, racial discrimination is not listed under the statute as a predicate act. *See* Ga. Code Ann. § 16-14-3(9).

## IV.

We conclude the district court did not err in granting summary judgment on Mr. Giles' exhausted claims.

**AFFIRMED.**